**RUI XING TAN, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 05–73135.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 2007.

Filed June 26, 2007.

Jisheng Li, Esq., Law Office of Jisheng Li, Honolulu, HI, for Petitioner.

District Counsel, Esq., Office of the District Counsel Department of Homeland Security, Honolulu, HI, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Andrew A. Steinberg, AUS, U.S. Department of Justice, Civil Division, Washington, DC, for Petitioner.

Before: ALARCÓN, BERZON, and TALLMAN, Circuit Judges.

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Mr. Tan also sought relief before the IJ and the BIA under Article 3 of the United Nations

## MEMORANDUM *

Rui Xing Tan, a native and citizen of the People's Republic of China, petitions for review of the Board of Immigration Appeals' ("BIA's") order affirming the Immigration Judge's ("IJ's") oral ruling that he is ineligible for asylum or withholding of removal under 8 U.S.C. § 1231(b)(3)(A).[1] Mr. Tan requested asylum and withholding of removal on the basis that, when he was growing up in China, the Chinese government persecuted him and his family because it considered them opponents of the Chinese Cultural Revolution and labeled them members of the "Dark Five Categories." Mr. Tan now argues that substantial evidence did not support the IJ's conclusion that his testimony was incredible insofar as it pertained to two incidents of mistreatment he allegedly suffered in China in 1978 and 1989. He also argues that substantial evidence failed to support the IJ's and BIA's determination that he is ineligible for asylum or withholding of removal.

█ We agree that substantial evidence did not support the IJ's adverse credibility determination. We therefore grant Mr. Tan's petition for review as to his asylum claim and remand that claim for further proceedings so that the BIA can determine, accepting his testimony as credible, whether Mr. Tan is entitled to humanitarian asylum under the BIA's decision in *Matter of Chen*, 20 I. & N. Dec. 16, Interim Decision (BIA) 3104, 1989 WL 331860 (BIA Apr. 25, 1989). We deny Mr. Tan's petition for review, however, as to the

Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. However, he does not appeal to this Court from the IJ's or the BIA's denial of that claim.

BIA's denial of his claim for withholding of removal.

Mr. Tan argues that the IJ improperly relied on his omission of the 1978 and 1989 incidents from his 1992 asylum application to deem incredible accounts of those incidents he provided in a second application he filed in 2003. We agree. " '[A]n adverse credibility finding is improper when an IJ fails to address a petitioner's explanation for a discrepancy or inconsistency....' " *Singh v. Gonzales,* 439 F.3d 1100, 1106 (9th Cir.2006) (quoting *Kaur v. Ashcroft,* 379 F.3d 876, 887 (9th Cir.2004)). Here, the IJ failed to address Mr. Tan's explanation that he omitted the 1978 and 1989 incidents from the 1992 application because an individual who helped him prepare the 1992 application told him only to include incidents of persecution directed toward his family members.

The IJ also improperly cited, as one basis for its adverse credibility determination, the fact that Mr. Tan checked "No" on the 1992 application in response to a question asking whether he or any of his family members had ever been arrested, detained, or interrogated. That answer was clearly a typographical error. Other information Mr. Tan provided with the 1992 application flatly contradicted the "No" answer by stating that Mr. Tan's father had been arrested and detained for being a counter-revolutionary.

The other bases for the IJ's adverse credibility determination are also insufficient. One is a four-year difference between the date Mr. Tan stated that Chinese authorities forcibly sterilized his sister and subjected her to a forced abortion, and the date a State Depart-ment Report said China instituted its "comprehensive and highly intrusive family planning policy." Mr. Tan's testimony regarding the date is not inconsistent with the date given by the State Department Report, because the procedures inflicted upon Mr. Tan's sister do not appear to have been part of the family-planning policy described in the report: the report describes the policy as including not forcible sterilization or abortion, but only "education, propaganda, and economic incentives as well as ... psychological pressure and economic penalties." In any event, any inconsistency that might exist between the dates is only a "[m]inor discrepanc[y] ... [that] cannot be viewed as [an] attempt[ ] by [Mr. Tan] to enhance h[is] claims of persecution," and therefore "ha[s] no bearing on credibility." *Kebede v. Ashcroft,* 366 F.3d 808, 811 (9th Cir.2004) (third alteration in original, internal quotation marks omitted).

The IJ also improperly disregarded an affidavit Mr. Tan presented to corroborate his testimony regarding the 1978 incident, on the basis that the author of the affidavit implausibly remembered the exact date of the incident. While the witness's memory of the exact date might in itself have been implausible, it is an insufficient basis for rejecting the entire affidavit. Finally, the IJ indicated that Mr. Tan's testimony regarding the 1978 incident was incredible because it lacked corroboration. However, "an alien's testimony, if unrefuted and credible, direct and specific, is sufficient to establish the facts testified without the need for any corroboration." *Ladha v. INS,* 215 F.3d 889, 901 (9th Cir.2000).[2]

---

**2.** The REAL ID Act of 2005, signed into law on May 11, 2005, permits an IJ to require an otherwise credible applicant to provide corroboration for his or her claims in certain circumstances. Pub.L. No. 109–13, 119 Stat. 231 § 101(a)(3) (amending 8 U.S.C. § 1158(b)(1)). That provision of the REAL ID Act does not affect Mr. Tan's petition, however, because it only applies to applications filed after May 11, 2005 and Mr. Tan filed his

Because substantial evidence did not support the IJ's other reasons for its adverse credibility determination, we must "deem [Mr. Tan's] testimony credible," *Smolniakova v. Gonzales*, 422 F.3d 1037, 1048 (9th Cir.2005) (internal quotation marks omitted), thus obviating the need for corroboration.

Because the IJ and BIA deemed Mr. Tan's testimony regarding the 1978 and 1989 incidents incredible, they apparently did not consider his testimony regarding those incidents in rejecting his asylum claim. We therefore remand that claim to the IJ to permit it to reconsider Mr. Tan's contention that he is eligible for asylum based on past persecution, accepting his testimony as credible. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam) ("Within broad limits the law entrusts the agency to make the basic asylum eligibility decision here in question."); *Chen v. Ashcroft*, 362 F.3d 611, 621 (9th Cir.2004) ("[W]hen we reverse the BIA's adverse credibility determination, we must ordinarily remand the case so that the BIA can determine whether the applicant has met the other criteria for eligibility." (quoting *He v. Ashcroft*, 328 F.3d 593, 604 (9th Cir.2003))).

■ We deny Mr. Tan's petition for review, however, as to his claim for withholding of removal. Even assuming that the BIA determines on remand that Mr. Tan's credible testimony entitles him to asylum based solely on past persecution under *Matter of Chen*, substantial evidence still would support the IJ's finding that "conditions have improved in China [such] that there is no well-founded fear of future persecution based upon this family's history." The IJ based that determination on a 1998 State Department document that re-

ferred to "applicants [who] claim past persecution because of ... membership in a 'black five element' family." The report states that "[t]he political environment of China today is significantly different from that of the 1950's and 1960's, and we are not aware of any citizen, in the last 10 years who has suffered official discrimination because of 'bad class' background." "[W]here the BIA rationally construes an ambiguous or somewhat contradictory country report and provides an 'individualized analysis of how changed conditions will affect the specific petitioner's situation,' substantial evidence will support the agency determination." *Gonzalez–Hernandez v. Ashcroft*, 336 F.3d 995, 1000 (9th Cir.2003) (quoting *Borja v. INS*, 175 F.3d 732, 738 (9th Cir.1999) (en banc)).

Although Mr. Tan argues that "[t]he country reports and other background information in the record do not indicate any changed country condition relating to China's political oppression," Mr. Tan waived that argument by conceding before the IJ that country conditions had changed. The principle that "theories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order" also "extends to claims not raised before the IJ." *Makhoul v. Ashcroft*, 387 F.3d 75, 80 (1st Cir.2004). Before the IJ, Mr. Tan expressly based his asylum claim solely on severe past persecution and *Matter of Chen*, and made no argument that he was likely to face future persecution if removed to China. The BIA's adequately supported finding that Mr. Tan failed to show a well-founded fear of future persecution precludes Mr. Tan from satisfying the higher "clear probability" or "more likely than not" standard applicable to claims for withholding of re-

applications before that date. *Id.* at § 101(h)(2); *Diallo v. Gonzales*, 439 F.3d 764,

765 n. 1 (7th Cir.2006).

moval. *Chen,* 362 F.3d at 617 (internal quotation marks omitted).

**PETITION FOR REVIEW GRANTED IN PART AND DENIED IN PART; APPLICATION FOR WITHHOLDING OF REMOVAL DENIED; APPLICATION FOR ASYLUM REMANDED TO THE BIA.**